UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER WYMA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Case No. 3:18-cv-00962-GCS |
| **STEVE RITZ and MOHAMMED SIDDIQUI,** | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Christopher Wyma, an inmate in the custody of the Illinois Department of Corrections ("IDOC") at Menard Correctional Center ("Menard"), alleges that Defendants Steve Ritz and M. Siddiqui violated his Eighth Amendment rights by demonstrating deliberate indifference to his serious medical needs. (Doc. 64). On April 17, 2018, Plaintiff brought this case under 42 U.S.C. § 1983. (Doc. 1). Now pending before the Court is Defendants' motion for summary judgment on the issue of Plaintiff's exhaustion of administrative remedies. (Doc. 88). Plaintiff responded on March 12, 2021 (Doc. 110), and the Court held a hearing on the motion on March 29, 2021. For the reasons outlined below, Defendants' motion for summary judgment is **GRANTED in part and DENIED in part.**

### FACTUAL BACKGROUND

Plaintiff was first transferred to Menard on April 19, 2017. (Doc. 89). At that time, Plaintiff was diagnosed with Irritable Bowel Syndrome ("IBS") and acid reflux. *Id.*

However, throughout the fall of 2017, Plaintiff's digestive symptoms worsened, and his acid reflux and IBS medications became less effective. *Id*. at p. 3. Plaintiff first saw Defendant Siddiqui for treatment of his IBS and acid reflux on December 21, 2017. *Id*. However, Plaintiff also saw other medical providers regarding the same symptoms in January 2018. *Id*.

Plaintiff first filed an emergency grievance regarding Defendant Siddiqui's treatment on February 27, 2018. (Doc. 89, p. 3). In his grievance, Plaintiff stated that his symptoms were worsening, he was unable to swallow, and that doctors were not running enough tests to diagnose the underlying cause of his symptoms. (Doc. 64, p. 6-7). Although Plaintiff did not mention Defendant Siddiqui by name, Defendant Siddiqui was the only M.D. at Menard who treated gastro-intestinal disorders at that time. (Doc. 110, p. 2). Grievance officers reviewed Plaintiff's grievance on an emergency basis, but deemed it was moot because Plaintiff was already scheduled for a follow-up medical appointment. (Doc. 89, p. 4). On March 15, 2018, Plaintiff appealed the grievance officer's decision to the Administrative Review Board ("ARB"). (Doc. 89, p. 4). In his appeal, Plaintiff states that he wanted to know whether he was approved for a diagnostic scope of his stomach and why he was not receiving more diagnostic exams. (Doc. 64, p. 7-8). However, the ARB denied the appeal on procedural grounds. (Doc. 89, p. 4).

Defendant Siddiqui referred Plaintiff's case for collegial review with Defendant Ritz on March 16, 2018. (Doc. 89, p. 4). On March 20, 2018, Defendant Ritz declined Plaintiff's request to be referred to an outside gastro-intestinal specialist. *Id*. Plaintiff claims that he filed another emergency grievance on March 18, 2018, naming Defendant

Ritz and requesting an explanation as to why he was denied an outside referral from collegial. However, because he did not receive a control number showing that the grievance was received, he filed his complaint on April 17, 2018. *See* (Doc. 1). Though Plaintiff claims he discussed this grievance with his grievance counselor personally, there is no indication that Plaintiff filed this grievance in his cumulative counseling summary nor is there any evidence of this grievance in any Menard record.

Plaintiff filed an amended complaint on January 17, 2020. (Doc. 64). In his amended complaint, Plaintiff supported his claim for deliberate indifference against Defendants Ritz and Siddiqui by pointing to a July 17, 2018 incident in which Defendant Siddiqui declined to provide Plaintiff a feeding tube, which was against the advice of an outside specialist. (Doc. 64, p. 10). Plaintiff also reiterated his claims against Defendants Siddiqui and Ritz for their actions in March 2018. *Id*.

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). In order to survive a motion for summary judgment, the non-moving party must provide admissible evidence for which a reasonable jury could find in favor of the non-moving party. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Traditionally, the Court's role in determining a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but is instead to determine whether there is a genuine issue of material fact. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in

*Pavey v. Conley*, the Seventh Circuit held that a judge, rather than a jury, should determine whether factual issues relating to the defense of the failure to exhaust administrative remedies exist. 544 F.3d 739, 741 (7th Cir. 2008). If the Court determines that a prisoner did not exhaust his administrative remedies, the Court will outline one of three potential outcomes: (a) if the plaintiff still has time to do so, the plaintiff must go back and exhaust his administrative remedies; (b) if the plaintiff's failure to exhaust was innocent, as where prison officials prevent a prisoner from exhausting his remedies, the plaintiff must be given another chance to exhaust; or (c) if the failure to exhaust was the prisoner's fault, the case is over. *Id.* at 742.

The Prison Litigation Reform Act ("PLRA") governs lawsuits filed by inmates and states that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."42 U.S.C. § 1997e(a).  In order to satisfy the PLRA's exhaustion requirement, prisoners must strictly adhere to the grievance process. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Prisoners must exhaust their remedies before filing suit. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file a suit and then exhaust administrative remedies while that suit is pending. *Id*. Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Prisoners must follow a prison's administrative rules when exhausting their remedies. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate

confined within the IDOC, Plaintiff is required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") in order to properly exhaust his claims. *See* 20 ILL. ADMIN. CODE. § 504.800, *et seq.* The grievance procedures require prisoners to submit a grievance to a counselor within sixty days of discovering the underlying incident. *See* 20 ILL. ADMIN. CODE § 504.800. These grievances must state the "factual details regarding each aspect of the offender's complaint including what happened, when, the name of any individual involved, and where the incident occurred." 20 ILL. ADMIN CODE § 504.810(a). If a prisoner is not satisfied with the counselor's response to the grievance, then that prisoner can submit a formal grievance to the prison's grievance officer. *Id.* at (a)-(b). The officer must then review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within two months of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 ILL. ADMIN. CODE § 504.830(e). If the prisoner is still not satisfied with the CAO's decision, the prisoner can formally appeal to the Director through the ARB within thirty days of the CAO's decision. *See* 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to their appeal. *Id.* The ARB then submits its recommendation to the Director, who is then responsible for issuing the IDOC's final decision. *See* 20 ILL. ADMIN. CODE § 504.850(f).

The grievance process also allows for an inmate to file an emergency grievance directly to the CAO. *See* 20 ILL. ADMIN. CODE § 504.840(a). The CAO may determine if

there is a substantial risk of imminent personal injury or other serious harm to the offender. *Id.* If the CAO determines that the grievance is a non-emergency, the prisoner is notified in writing that the prisoner may resubmit the grievance as a non-emergency and move forward with the standard grievance process. *See* 20 ILL. ADMIN. CODE. § 504.840(c).

The statutory purpose of the PLRA is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). This allows the prison administration an opportunity to fix the problem or to reduce damages and to shed light on factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. To allow otherwise would frustrate the purpose of the grievance process. *See Porter v. Nussle*, 534 U.S. 516, 526 (2002). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective grievance. *See Woodford*, 548 U.S. at 83. Unless a prisoner completes the administrative review process by following the rules established for that process, exhaustion has not occurred. *See Pozo*, 286 F.3d at 1023.

## ANALYSIS

During the March 29, 2021 hearing, Plaintiff indicated that he filed two grievances addressing his complaints against Defendants Ritz and Siddiqui. Plaintiff filed the first grievance on February 27, 2018. (Doc. 89, p. 8). He states that he filed the second grievance on March 18, 2018. The Court finds that Plaintiff's February 27th grievance remains unexhausted as to Defendant Ritz because Plaintiff filed this grievance before Defendant

Ritz participated in Plaintiff's medical care. Furthermore, the Court finds that Plaintiff's March 18th grievance remains unexhausted in that Plaintiff filed his complaint 30 days after submitting this grievance. The Court therefore grants summary judgment as to Defendant Ritz. However, in contrast, Plaintiff may rely on the continuing violation doctrine in order to show that he exhausted his administrative remedies with respect to Defendant Siddiqui. Accordingly, summary judgment is denied as to Defendant Siddiqui.

## I. Whether the February 27, 2018 Grievance Provided Proper Notice to Defendants Ritz and Siddiqui

Defendants argue that Plaintiff's February 27, 2018 grievance failed to provide the IDOC with notice of Plaintiff's claims against either defendant because the grievance failed to allege sufficiently the decision being challenged, who made the decision, and when the decision was made. (Doc. 89, p. 8). First, Defendants point out that at the time of the grievance, Plaintiff was already seeing multiple doctors for follow-up appointments and diagnostics. *Id*. Though Plaintiff complained he was "not getting answers" in his grievance (*see* Doc. 64, p. 6), he does not specifically name either Defendant Siddiqui or Defendant Ritz in his grievance. (Doc. 89, p. 8). Without a more specific description of the conduct underlying the complaint or without naming either defendant, Defendants allege that Plaintiff did not provide sufficient notice to address the problem about which he complained in his February 27th grievance. *Id*. at p. 8-9.

In response, Plaintiff points out that the grievance specifically outlines Plaintiff's inability to swallow and complains that medical personnel are not running enough tests

to diagnose Plaintiff's pain. (Doc. 110, p. 4-5). During Plaintiff's March 15, 2018 appeal of the grievance officer's rejection of the February 27th grievance, Plaintiff further states that he wants to know whether he has been approved for a diagnostic scope and why no additional tests are being conducted. *Id*. at p. 11-12. As Defendant Siddiqui is the only gastro-intestinal M.D. available at Menard, Plaintiff asserts that his references to his gastro-intestinal pain and lack of specific gastro-intestinal diagnostic techniques provided the IDOC with sufficient notice of Plaintiff's claim against Defendant Siddiqui. *Id.* at p. 7.

When a plaintiff does not know the name of the person against whom the plaintiff is complaining of in a grievance, the plaintiff may provide as much descriptive information as possible about that person in lieu of a name. *See* 20 ILL. ADMIN. CODE § 504.810(c); *see also Lewis v. Stout*, 3:18-CV-2209-MAB, 2020 WL 6271053, at *3 (S.D. Ill. Oct. 26, 2020). Furthermore, when a plaintiff grieves about issues relating to specific care which only one possible defendant could provide, that plaintiff has provided sufficient notice for the IDOC to investigate his claim thus fulfilling the statutory purpose of the PLRA. *See, e.g., Selvie v. Siddiqui*, 3:20-cv-00328-GCS, 2021 WL 347836, at *6 n.2 (S.D. Ill. Feb. 2, 2021)(finding that the plaintiff sufficiently described needing specific podiatric care such that the IDOC had the notice necessary to investigate the plaintiff's claim against a particular defendant). *See also Spruill v. Gillis*, 372 F.3d 218, 234 (3rd Cir. 2004)(noting that prison's grievance process excused procedural default of not naming a particular individual when the first level response identified the potentially responsible individual by name). Although Plaintiff saw multiple doctors during the time period

which covered his February 27th grievance, only Defendant Siddiqui could provide Plaintiff with the gastro-intestinal care Plaintiff requested. Plaintiff's grievance therefore describes both his complaints and their relation to Defendant Siddiqui sufficiently to provide the IDOC with the notice necessary to investigate his claim.

Defendants also point out that Plaintiff's reliance on his February 27th grievance creates a "temporal problem." (Doc. 89, p. 9). Plaintiff's initial grievance outlines his pain when swallowing and a lack of answers from his treating physicians; Plaintiff further claims that he is struggling with what he believed at the time to be acid reflux. (Doc. 64, p. 6). However, in Plaintiff's amended complaint, he relies on this grievance to support claims regarding Defendant Siddiqui's decision to decline a diagnostic scope on March 7, 2018; Defendant Ritz's decision to deny referral to a gastro-intestinal specialist on March 20, 2018; and Defendant Siddiqui's failure to order Plaintiff a feeding tube on July 17, 2018. (Doc. 89, p. 9-10). Defendants point out that Defendant Ritz did not begin treating Plaintiff until March 16, 2018, which was after Plaintiff had filed his February 27th grievance. *Id*. at p. 4, 10.

Plaintiff responds that the "temporal issues" regarding his February 27th grievance are addressed by the continuing violation doctrine. Under the continuing violation doctrine, inmates are not required to file multiple, successive grievances raising the same issues and facts if the inmate is alleging a continuing violation. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). "[D]eliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition and ends only when treatment is provided or the inmate is released." *Jervis v.*

*Mitcheff*, No. 06-4236, 258 Fed. Appx. 3, 5-6 (7th Cir. Dec. 13, 2007)(citing *Heard v. Sheahan*, 253 F.3d 316, 318–319 (7th Cir. 2001)).

An inmate alleging a continuing violation satisfies the exhaustion requirement when the prison has received notice of and has an opportunity to correct the problem. *See Laktas v. Wexford Health Sources, Inc.*, No. 18-cv-1299-NJR-RJD, 2019 WL 3928690, at *3 (S.D. Ill. Aug. 20, 2019). However, this notice is afforded only when the grievance is truly continuing. The continuing violation doctrine does not apply to discrete interactions which merely relate to an overarching complaint. *See Ridgeway v. Wexford Health Sources, Inc.*, No. 18-cv-1970-JPG-RJD, 2019 WL 8509649, at *3 (S.D. Ill. Dec. 11, 2019).

Defendants note two instances in which Plaintiff's amended complaint connects discrete interactions with Defendant Siddiqui to his February 27th grievance: (i) when Defendant Siddiqui declined to order a "scope" of Plaintiff's stomach for diagnostic purposes on March 7, 2018; and (ii) when Defendant Siddiqui did not immediately order Plaintiff a feeding tube on July 17, 2018. (Doc. 89, p. 9-10). Defendants also frame the March 20, 2018 decision to deny Plaintiff's referral to an outside specialist as an interaction separate from that grieved in Plaintiff's February 27th grievance. *Id*. at p. 9.

Though Plaintiff complains that medical personnel were not conducting enough diagnostic tests in his February 27th grievance, he also specifically stated that he wanted a "scope" in his March 15, 2018 appeal. (Doc. 110, p. 11-12). The reference to a specific diagnostic technique contextualizes Plaintiff's initial request and suggests that Plaintiff was not just grieving about Defendants' delay in diagnosing his inability to swallow, but instead was requesting specific action from the defendants, *i.e.*, that a diagnostic scope of

his stomach be conducted. This description references a specific decision from Defendant Siddiqui, which occurred only once, on March 7, 2018. Though the defendants later denied Plaintiff other specific diagnostic exams and treatments, these denials do not relate back to Plaintiff's February 27th grievance under the continuing violation doctrine. Therefore, the Court finds that Plaintiff's February 27th grievance exhausted his claim regarding Defendant Siddiqui's decision to decline a diagnostic scope only.

Plaintiff also argues that Defendant Ritz should be incorporated into Plaintiff's February 27th grievance through the continuing violation doctrine. (Doc. 110, p. 8). However, as Defendant Ritz had not yet treated Plaintiff when he filed his February 27th grievance, there is no evidence that the grievance sufficiently put the IDOC on notice to investigate Plaintiff's claim against Defendant Ritz – primarily because that claim did not yet exist. Though Plaintiff is not required to file a grievance regarding each time a physician continued to deny him treatment, Defendant Ritz's later decision to decline a referral to an outside specialist was not a continuation of Defendant Siddiqui's decision to deny Plaintiff treatment; it was a new and separate complaint. Had Plaintiff grieved Defendant Ritz's decision after March 20, 2018, he may be able to argue that he did not need to file successive grievances on that issue under the continuing violation doctrine. However, a grievance regarding Defendant Siddiqui's prior treatment cannot trigger the continuing violation doctrine for an entirely different defendant's treatment decisions. The Court therefore finds that Plaintiff's February 27th grievance did not exhaust his claims against Defendant Ritz.

### II.     Whether Plaintiff Properly Exhausted his March 18, 2018 Grievance

There are three circumstances in which an administrative remedy is not capable of use to obtain relief (and therefore unavailable): (i) when the remedy operates as "a simple dead end," in which officers are unable or unwilling to provide relief; (ii) when, though mechanisms exist through which inmates can technically obtain relief, the mechanisms are so opaque no ordinary inmate can navigate them; or (iii) when prison administrators thwart an inmate's attempt to take advantage of available remedies through "machination, misrepresentation or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016); *see also Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008); *Pavey*, 544 F.3d at 742; *Dole* 438 F.3d at 808. When a plaintiff properly followed the procedure for exhausting administrative remedies, but prison officials mishandled the grievance, the remedy is rendered unavailable. *See Dole*, 438 F.3d at 811. For example, if the ARB rejected an appeal on the basis of a grievance officer's misidentification of the inmate's prison number, a plaintiff could argue that this mistake rendered his attempts to exhaust his administrative remedies thwarted. *See Ross v. Bock*, No. 16-C-8672, 2017 WL 6758394, at *3 (N.D. Ill. Nov. 29, 2017).

If grievance personnel do not respond to an inmate's grievance, that inmate's administrative remedies are also rendered unavailable. *See Dole*, 483 F.3d at 809. However, in order for an inmate's remedies to be unavailable due to lack of a response, an inmate must have no indication that officials are pursuing his case. *See Reid v. Balota*, 962 F.3d 325, 331 (7th Cir. 2020). For example, when prison officials state that they will

inform an inmate of the status of his or her grievance within sixty days, "whenever possible," a period of silence exceeding six months nevertheless does not render remedies unavailable because officials may still be investigating a complicated case. *Ford*, 362 F.3d at 400. In contrast, in *Reid*, the Seventh Circuit Court of Appeals found that a two-month period of silence rendered administrative remedies unavailable only because the inmate had no other reason to believe that anyone was "looking into" his grievance. 962 F.3d at 331.

Although prison officials may, in some circumstances, render a prisoner's administrative remedies unavailable by failing to respond to a grievance, a court nevertheless cannot find that the administrative process was not available when a prisoner rushed to court to file a lawsuit shortly after an administrative response was required. *See, e.g., Mlaska v. Shah,* Nos. 10-2255, 10-2401, 10-3795, 428 Fed. Appx. 642, 645 (7th Cir. June 29, 2011)(stating that prisoner failed to exhaust where, at best, he filed lawsuit one month after the warden's 60–day response period elapsed); *Jamison v. Franko*, No. 12-C-0242, 2013 WL 5166626, at *3 (N.D. Ill. Sept. 13, 2013)(noting that prisoner failed to exhaust where he filed suit less than two weeks after the 30–day response period had elapsed); *Gregory v. Santos*, No. 07-669-JPG-CJP, 2010 WL 750047, at *6 (S.D. Ill. Jan. 19, 2010)(stating that prisoner failed to exhaust where he gave the ARB "only a few days leeway beyond the six-month period"). Instead, prisoners must file suit only after a sufficient period of time has elapsed for a required administrative response. *See, e.g., Kyles v. Mathy,* No. 09–1084, 2010 WL 3025109, at *4 (C.D. Ill. Aug. 2, 2010)(noting that prisoner exhausted when he waited approximately one and a half months after the expiration of

the two-month response deadline before moving on to the next step of the grievance process); *Green v. Hartman,* No. 04-C-4304, 2006 WL 2699336, at *3 (N.D. Ill. Sept. 18, 2006)(finding that prisoner exhausted where he waited to file suit until two months after the expiration of the 30–day response deadline); *Goodman v. Carter,* No. 2000-C-948, 2001 WL 755137, at *3 (N.D. Ill. July 2, 2001)(noting that prisoner exhausted where he waited to file suit until 45 days after the warden's response was due).

In Illinois, grievances officers are generally permitted sixty days in which to report his or her findings and recommendations to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e). However, when an inmate files an emergency grievance, the time period in which an inmate is expected to wait before presuming his or her administrative remedies have been exhausted is shortened. *See Muhammed v. McAdory*, No. 06-2304, 214 Fed. Appx. 610, 613 (7th Cir. Jan. 17, 2007). For instance, in *Muhammed*, the district court initially granted summary judgment in the defendants' favor because the plaintiff filed his complaint fifty-one days after submitting an emergency grievance to which he had not yet received a response. *Id*. at 611. Although the defendants argued that the plaintiff was required to wait the full two month period before filing suit on appeal, the Seventh Circuit nevertheless reversed the decision of the district court, noting that this "is exactly the type of situation that renders an inmate's administrative remedy unavailable." *Id*. at 613-614 (citing *Dole*, 483 F.3d at 811-812; *Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir. 2005)).

During the March 29, 2021 hearing, Plaintiff asserted that he filed an emergency grievance on March 18, 2018. Plaintiff stated that his grievance named Defendant Ritz, and he complained that he did not understand why his request for a referral to a gastro-intestinal specialist was denied; he also wanted to know what other tests needed to be done to obtain the referral. Plaintiff claimed that he never received a response regarding this grievance. Although officials are required to provide inmates with a "control number" indicating that their grievance was received, Plaintiff did not receive any indication that officials received or reviewed this grievance.

The Court does not find Plaintiff's testimony in this regard to be credible. Though Plaintiff claims he spoke directly with his grievance counselor regarding his March grievance, there is no indication that officials received this grievance in his cumulative counseling summary. Plaintiff states that this summary would only include processed grievances. However, Plaintiff did not address this grievance in his complaint, despite testifying that he was aware a grievance to which officials did not respond could be considered exhausted. Just as significant, Plaintiff did not mention this grievance in his response to Defendants' motion for summary judgment.[1] While Plaintiff explained the substance of the grievance and how he submitted it, he could not recall the name of or

---

[1] The Court further notes that at the hearing Defense counsel did not call any witnesses because the Defendant thought the only relevant grievance was the February 27, 2018 grievance and that the issues before the Court could be resolved without the need for any testimony. The Court then indicated that as long as there was no other relevant grievance, such as a grievance which was not responded to, then the matter could be resolved without testimony. When the Court then turned to the Plaintiff to see if he wished to present any evidence, Plaintiff's counsel was at first willing to proceed to argument without testimony, but wanted time to clarify that point with his client. After a brief recess, Plaintiff's counsel then informed the Court that it wished to call Plaintiff as a witness, and it was during Plaintiff's testimony that the March 18, 2018 grievance was brought up for the first time.

describe the person who picked up his grievance from the cell bars. Nor could Plaintiff recall the name of or describe the counselor with whom he spoke with regarding this grievance. Finally, and most importantly, Plaintiff claims that the March 18th grievance was meant to challenge Defendant Ritz's denial of a referral to an outside specialist. However, that decision was made on March 20, 2018, two days after Plaintiff filed his purported grievance. (Doc. 64, Exh. 5). As this is the first indication that Plaintiff filed a March grievance, and there is no evidence supporting this contention, the Court declines to credit Plaintiff's allegation regarding this grievance.

However, even if the Court did credit Plaintiff's testimony regarding his March grievance, this grievance remains unexhausted. Though the Seventh Circuit has not applied a bright-line approach according to when an inmate may file a complaint after an emergency grievance is ignored, the delay at hand is significantly less than the delay supporting an inference that the emergency grievance was exhausted in *Muhammed*. Plaintiff waited only thirty days after appealing his grievance before filing his complaint. *See* (Doc. 1). This is half the time grievance officers are permitted to respond to a grievance. 20 ILL. ADMIN. CODE § 504.830(e). The statutory purposes of the PLRA include permitting the IDOC and correctional centers the time needed to investigate and attempt to resolve an inmate's complaints internally prior to litigation. *See Woodford* 548 U.S. at 93. A mere thirty days is not a sufficient amount of time for the responsible officials to investigate and attempt to remedy the complaints underlying Plaintiff's grievance.

Accordingly, the Court finds that Plaintiff rushed to file his complaint leaving his March 18, 2018 grievance unexhausted.

## CONCLUSION

For the above stated reasons, Defendants' motion for summary judgment for failure to exhaust administrative remedies (Doc. 88) is **GRANTED in part and DENIED in part.** Plaintiff's claim against Defendant Ritz remains unexhausted. Accordingly, the Court **DISMISSES** Defendant Ritz without prejudice. Furthermore, the Court finds that only Plaintiff's claim regarding Defendant Siddiqui's decision to decline a diagnostic scope of Plaintiff's stomach is exhausted. The Court therefore **GRANTS** summary judgment on all other issues in Plaintiff's single count without prejudice.

**IT IS SO ORDERED.**

**Dated: March 31, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.03.31 16:54:42 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**